IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2020

## STATE OF TENNESSEE v. WILLIAM JOHNSON

**Appeal from the Criminal Court for Shelby County**
**No. 18-04642    John W. Campbell, Judge**

---

### No. W2019-00914-CCA-R3-CD

---

The defendant, William Johnson, appeals his Shelby County Criminal Court jury conviction of vandalism of property valued at $500 or less, arguing that the evidence was insufficient to sustain his conviction. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and J. ROSS DYER, JJ., joined.

Lance R. Chism (on appeal) and Robert Spence (at trial), Memphis, Tennessee, for the appellant, William Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Scott Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Shelby County Grand Jury charged the defendant in case number 18-04642 with one count of vandalism of property valued at more than $1,000 but less than $10,000 for slashing the tires of Willie Finklea's vehicle.

At the February 2019 trial, Willie Finklea, the victim, testified that at the time of the offenses, he lived at 581 Moline Road in Memphis, where he had resided for approximately 37 to 38 years. In December of 2015 and January of 2016, his wife, daughter, and son-in-law lived with him. At that time, he owned a 1997 Dodge Caravan and a 1998 Lexus. The Lexus was his daily vehicle. His daughter, Lisa Finklea Bobbitt, owned a 1998 Nissan Altima, and his son-in-law, Larry Bobbitt, owned a 2011 Chevrolet Malibu.

Although he could not remember the exact date, the victim recalled that sometime in early December 2015, he returned home from taking his wife to the hospital and learned from Ms. Bobbitt that the tires of the Altima and Malibu had been "sliced." He confirmed that the tires on both vehicles had indeed been cut. Two days later, "all four tires on [his] Lexus was sliced." He replaced the tires on his Lexus on December 3, 2015, at a cost of $586.63. Three days later, all four tires on his Lexus were slashed again, and he replaced the tires on December 8, 2015, at a cost of $640.16. After the tires on his Lexus were slashed a third time, he replaced them on January 27, 2016, at a cost of $428.24.

After the first time his tires were slashed, the victim "went around through the neighborhood asking my neighbors" if they had seen "anybody, you know, come into my yard slicing tires." One week later, he reported the incident to the police, identifying the defendant as a potential suspect. Although the victim had not seen the defendant damage his tires, his shared history with the defendant led him to suspect the defendant. The victim explained that in 2013, the defendant had initiated a lawsuit wherein he alleged that the victim's grandson had damaged the defendant's vehicle. After the May 2013 trial in that case, the defendant told the victim, "[Y]ou might not pay anything today but you will pay." Around that same time, the victim's daughter had turned down the defendant for a date. At the time of all of these incidents, the defendant lived a few houses away from the victim. The victim stated that he had never given the defendant permission to be on his property or do anything with his vehicle.

During cross-examination, the victim acknowledged that he never saw anyone slash his tires but said that, a "day or two" after the second incident in December 2015, a neighbor, Franklin Jones, told the victim that he had seen the defendant do it. The victim notified the police after the second incident on December 8, 2015. The victim learned of Mr. Jones's eyewitness account after speaking with the police on December 8, and he contacted the officer with the updated information. He acknowledged that Mr. Bobbitt told the police that "we think that the students that's going to Mitchell High was coming through slicing the tires" because the victim had asked the students to "stay off my grass."

The victim later clarified that Mr. Jones did not tell him about seeing the defendant slash his tires until after the third incident, which occurred on January 26, 2016, sometime after 4:45 a.m. Mr. Jones also told him that he had asked the defendant "why was he messing with [the victim's] tires" and that the defendant "didn't say anything but left." It was after the victim received the information from Mr. Jones that he first met with Memphis Police Department ("MPD") Officer Todd Hill.

The victim elaborated on what he believed to be the impetus for the defendant's slashing his tires: "It all stemmed from [the defendant's] trying to date my daughter. She turned him down. Then he asked my granddaughter for a date. . . . She turned him down. And . . . after that, that's when I had to go to court on him saying that my grandson's bike . . . scratched his car."

On redirect examination, the victim stated that he identified the defendant as a potential suspect to Officer Hill sometime before he had spoken with Mr. Jones, and he spoke with Officer Hill again after Mr. Jones reported witnessing the defendant slashing the tires.

Franklin Jones testified that he learned that the victim's tires had been slashed in December of 2015. On some later date, in an effort "to see who was doing it," Mr. Jones "cracked [his] door open just a little crack," turned his porch light off, and, sometime between 2:00 a.m. and 3:00 a.m., he saw the defendant get out of a "Cadillac truck" and enter the victim's yard. Mr. Jones recalled that the defendant "bent down and stuck something" near the victim's car, and Mr. Jones "ran up on him," at which point the defendant "got in his truck and went on about his business." Mr. Jones explained that 2:00 a.m. or 3:00 a.m. was his usual wake-up time to prepare for his 6:00 a.m. work shift. Mr. Jones said that he made a point to look outside when he got up because he knew that someone had been slashing the victim's tires. Mr. Jones stated that he did not call the police at that time "because I didn't want to be in nobody's business," but he told the victim what he had seen. Mr. Jones stated that he had never discussed this case with the police but acknowledged that he identified the defendant as the perpetrator in a prior hearing.

During cross-examination, Mr. Jones explained that he lived across the street from the victim, and he estimated the distance between their houses as being the same as between the witness stand and a point in the courtroom. Mr. Jones identified his and the victim's houses on photographs of the neighborhood, which photographs were shown to the jury.

Contrary to his direct examination testimony, Mr. Jones stated that when he first approached the defendant outside of the victim's house, he did not speak to him. A couple of days later, he again saw the defendant at the victim's house, and he called the victim to notify him, but "[b]y the time the daughter came to the door and cut the light on, [the defendant] took off." Mr. Jones again denied ever talking to the police about this case. Mr. Jones described the defendant's vehicle as a cream -colored four-door Cadillac truck.

-3-

MPD Sergeant Lachristo Flagg responded to a report of vandalism of a white Lexus at the victim's house on January 26, 2016. She photographed the Lexus' flat tires, which photographs were exhibited to her testimony and shown to the jury.

On cross-examination, Sergeant Flagg did not specifically recall whether other cars were parked in the victim's driveway at that time, but she stated that if she had seen damage to other vehicles, she would have documented it as well. The victim did not indicate that any vehicle other than the Lexus had been damaged on that date. She determined that the vandalism occurred sometime between 4:45 a.m. and 6:45 a.m. on January 26.

At the close of the State's case in chief, the court removed from the jury's consideration the December 3 and 8, 2015 incidents because the State failed to establish the defendant's identity as the perpetrator in those instances. The trial continued only as to the incident of January 26, 2016. After a *Momon* colloquy, the defendant elected not to testify, but he did put on proof.

The defendant's sleep study record from the Veteran's Affairs Medical Center in Memphis was admitted by affidavit.

Doctor Forrest Charles Ward of Saint Francis Medical Partners in Bartlett testified as an expert on the treatment of sleep apnea with CPAP and BiPAP machines. He explained that the records of the defendant's sleep study indicate that the defendant used a BiPAP machine, and the record "tells you his total duration per night on the machine," including "the time that he was on the machine." Based on the defendant's sleep study record, Doctor Ward explained that on January 26, 2016, the defendant "slept for four hours and 39 minutes" between approximately 4:00 a.m. and 8:39 a.m.

During cross-examination, Doctor Ward acknowledged that the report did not indicate who was using the machine but only that the device was in use at certain times. He clarified that the report indicated the time the defendant used the machine from the evening of the date listed to the morning of the following date. For example, the times indicated for January 26 after midnight, were actually the early morning hours of January 27. Doctor Ward explained that the entry related to the night of January 25 and the early morning hours of January 26, indicated that the defendant slept from approximately 5:15 a.m. to 10:00 a.m.

MPD Officer Todd Hill investigated the vandalism of the victim's vehicle beginning on January 28, 2016. He did not have any suspects at that time. The case was

"put into an inactive file" because there was insufficient evidence to pursue it at that time, but when the victim contacted him with additional information on March 15, 2016, the case was returned to active status. Officer Hill developed the defendant as a possible suspect but was unable to contact the defendant because the number given to him "was out of service," and he had no other information on the defendant. On April 19 of that year, he learned the defendant's address and that Mr. Jones had witnessed one incident. He recalled "having a phone conversation" with Mr. Jones. Officer Hill learned of a civil lawsuit between the defendant and the victim, but he did not follow up on the civil case. During cross-examination, Officer Hill stated that the victim provided him with the defendant's address.

On this evidence, the jury found the defendant guilty in case number 18-04642 of vandalism of property valued at $500 or less, setting the maximum amount of restitution at $428.24.[1] After a sentencing hearing, the trial court sentenced the defendant to a probationary sentence of 11 months and 29 days and ordered restitution in the amount of $428.24. Following a timely but unsuccessful motion for a new trial, the defendant filed this appeal.

In this appeal, the defendant argues that the convicting evidence was unreliable and, therefore, was insufficient to support his conviction. We disagree.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

---

[1] The defendant was also charged in case number 18-06210 with vandalism for slashing the victim's tires on September 14, 2017, and the two cases were tried together. Because the jury acquitted the defendant of the charge in case number 18-06210, we have not included the proof related to that charge in our recitation of the proof at trial.

As relevant to this case, "[a] person commits the offense of vandalism who knowingly . . . [c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." T.C.A. § 39-14-408(b)(1). "'Damage' includes, but is not limited to . . . [d]estroying, polluting, or contaminating property[,]" and [t]ampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person . . . ."

Here, the evidence adduced at trial, viewed in the light most favorable to the State, established that, on January 26, 2016, the victim discovered that the tires on his Lexus had been slashed. Sometime after the incident on January 26, Mr. Jones told the victim that he had seen the defendant, who lived only a few houses away from the victim, "ben[d] down and st[i]ck something" near the victim's vehicle one early morning. Mr. Jones also told the victim that when Mr. Jones approached the defendant, the defendant left the scene. Testimony from the victim and Sergeant Flagg established that the January 26 incident occurred sometime after 4:45 a.m., and the defendant's sleep study report indicated that the defendant did not go to sleep until approximately 5:15 a.m. that morning. The victim testified that he paid $428.24 to replace the slashed tires on his Lexus after the January 26 incident. Although some of the testimony was inconsistent, the jury resolved any issues of credibility, as was their prerogative. Under these circumstances, we conclude that the evidence was sufficient to support the defendant's conviction for vandalism of property valued at $500 or less.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE